CHRIS R. OTTENWELLER (State Bar No. 73649)
I. NEEL CHATTERJEE (State Bar No. 173985)
MARK R. WEINSTEIN (State Bar No. 193043)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025
Telephone:      (650) 614-7400
Facsimile:      (650) 614-7401

LISA C. WARD (State Bar No. 175237)
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, California 92614
Telephone:      (949) 567-6700
Facsimile:      (949) 567-6710

Attorneys for Defendant and Counterclaimant EMC Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HEWLETT-PACKARD COMPANY, HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., <br><br>                  Plaintiffs, <br><br>    v. <br><br> EMC CORPORATION, <br><br>                  Defendant. | CASE NO:  C 04-04546 JF <br><br> **EMC'S NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS** <br><br> Date:      February 4, 2005 <br> Time:      9:00 a.m. <br><br> Honorable Jeremy Fogel |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND ............................................................................................ 3

    A.      This Case Was Filed to Circumvent a Ruling in *HP I* ........................................ 3

    B.      This Case Presents the Same Claims HP Was Prohibited From Asserting in *HP I* ............................................................................................................. 3

    C.      The Issues in this Case Substantially Overlap With the Issues Being Litigated in *HP I* ............................................................................................ 5

III.    THIS ACTION SHOULD BE DISMISSED PURSUANT TO THE RULE AGAINST CLAIM SPLITTING ............................................................................ 7

    A.      The Rule Against Claim Splitting ......................................................................... 7

    B.      HP Is Improperly Splitting Its Causes Of Action In Order To Circumvent An Adverse Ruling ............................................................................................ 10

    C.      Allowing HP To Proceed With This New Lawsuit Would Be Highly Prejudicial To EMC And Set Dangerous Precedent In This District ................... 11

IV.     HP WAIVED ALL CLAIMS AGAINST EMC PRODUCTS THAT HP PREVIOUSLY ACCUSED IN *HP I* ............................................................... 12

V.      IF THIS ACTION IS NOT DISMISSED, IT SHOULD BE STAYED ........................... 14

    A.      Staying *HP II* Will Conserve Judicial Resources By Avoiding Duplicative Litigation ........................................................................................................ 15

    B.      Denying A Stay Of *HP II* Would Result In Hardship And Inequity To EMC. ............................................................................................................. 16

    C.      A Stay Will Not Prejudice HP. ........................................................................... 16

VI.     CONCLUSION ............................................................................................ 17

EMC'S MOTION TO DISMISS
CASE NO. C-04-04546 JF

# TABLE OF AUTHORITIES

**Page**

## CASES

*CMAX, Inc.* v. *Hall*,
    300 F.2d 265 (9th Cir. 1962)................................................................. 15, 17

*Chinn* v. *Giant Food, Inc.*,
    100 F. Supp. 2d 331 (D. Md. 2000) ................................................. 9

*Cohen* v. *Carreon*,
    94 F. Supp. 2d 1112 (D. Or. 2000) ........................................... 15, 16

*Curtis* v. *Citibank N.A.*,
    226 F.3d 133 (2d Cir. 2000)........................................................ 7, 8, 10

*Emrich* v. *Touche Ross & Co.*,
    846 F.2d 1190 (9th Cir. 1988).................................................... 3

*King* v. *Atiyeh*,
    814 F.2d 565 (9th Cir. 1987) ...................................................... 13

*Landis* v. *North American Co.*,
    299 U.S. 248 (1936)...................................................................... 14

*London* v. *Coopers & Lybrand*,
    644 F.2d 811 (9th Cir. 1981) ...................................................... 13

*Mediterranean Enters., Inc.* v. *Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983) .................................................... 15

*Mir* v. *Little Co. of Mary Hosp.*,
    844 F.2d 646 (9th Cir. 1988)....................................................... 3

*Oxbow Energy Inc.* v. *Koch Industries, Inc.*,
    686 F. Supp. 278 (D. Kan. 1988) ................................................ 9

*Pharmacia & Upjohn Co.* v. *Mylan Pharms., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999).................................................. 16

*Reiffin* v. *Microsoft Corp.*,
    270 F. Supp. 2d 1132 (N.D. Cal. 2003) ................................ 13, 14

*Scott* v. *Kuhlmann*,
    746 F.2d 1377 (9th Cir. 1984)..................................................... 8

*Sensormatic Sec. Corp.* v. *Sensormatic Elecs. Corp.*,
    329 F. Supp. 2d 574 (D. Md. 2004) ...................................... 7, 8, 9

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3   *Typeright Keyboard Corp.* v. *Microsoft Corp.*,

4        374 F.3d 1151 (Fed. Cir. 2004)................................................................... 16

5   *United States ex rel. Barajas* v. *Northrop Corp.*,

        147 F.3d 905 (9th Cir. 1998)....................................................................... 7

6

7   *United States* v. *Haytian Republic*,

        154 U.S. 118 (1894) ................................................................................. 7, 9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on February 4, 2005 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5, 280 South First Street, San Jose, California, Defendant EMC Corporation ("EMC") will and hereby does respectfully move for an order dismissing this action or, in the alternative, staying this action pending final judgment in another case pending before the Court, *Hewlett-Packard Company, et al.* v. *EMC Corporation*, Case No. C-02-04709 JF (HRL) (N.D. Cal.). EMC's motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and the inherent powers of the Court. This motion is based on the following Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently herewith, and such other matters as may be presented at the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This action is the second lawsuit filed by Plaintiffs Hewlett-Packard Company and Hewlett-Packard Development Company L.P. (collectively "HP") against EMC based on the same patents. The first lawsuit, entitled *Hewlett Packard Company, et al.* v. *EMC Corporation*, Case No. C-02-04709 JF (HRL) (N.D. Cal.) ("*HP I*"), is currently pending before the Court. The present action, which will be referred to as "*HP II*," was filed just days after the Court in *HP I* denied HP's motion for leave to amend its infringement contentions to add accused products. *HP II* represents an attempt by HP to circumvent that ruling by filing a new action that asserts the same patent infringement allegations that it was prohibited from asserting in *HP I.*

A long-standing and well-established principle of law prohibits such a maneuver. The rule against claim-splitting, recognized by federal courts for more than a century, prohibits a plaintiff from filing a new lawsuit on claims that arise out of the same transaction or series of transactions that are at issue in a pending lawsuit. The rule requires that all claims arising out of a single wrong be presented in one action. The rule is designed to conserve judicial resources

1   and protect parties from vexatious and duplicative litigation.  Significantly, courts have applied

2   the rule to prevent the very type of circumvention HP is attempting in this case.

3          HP filed a motion for leave to amend its infringement contentions in *HP I* to add

4   accused products to that lawsuit.  But the Court held that HP failed to show good cause for its

5   proposed amendment, as required by the Patent Local Rules of this district.  Dissatisfied with

6   that ruling, HP filed this new action in which it asserts the very claims it was prohibited from

7   asserting in *HP I*.  In doing so, HP is improperly splitting its causes of action and exposing both

8   the Court and EMC to wasteful, duplicative litigation.  The Court should exercise its inherent

9   authority to control its docket and protect parties from vexatious litigation by dismissing this

10  new lawsuit.

11         If the Court does not dismiss this action, EMC respectfully submits that it should

12  be stayed until *HP I* reaches final judgment.  Absent a stay, there will be an enormous

13  duplication of effort by both the Court and the parties, at considerable wasted expense.  This

14  new action involves the same patents that are at issue in *HP I*.  Resolution of the numerous

15  disputed issues in *HP I* most likely will moot most if not all of the allegations raised in HP's

16  new complaint.  *HP I*, which has been pending for more than two years, is moving toward

17  ultimate resolution pursuant to the Court's Case Management Order.  Given its size and

18  complexity, *HP I* is already consuming a substantial amount of the Court's resources, not to

19  mention EMC's.  It would be fundamentally unfair to allow HP to launch a new lawsuit

20  imposing burdens on the Court and EMC when so much already has been invested in *HP I*.  The

21  unfairness is even more pronounced when one considers that HP filed this new action because it

22  had failed to act diligently in *HP I*.  Accordingly, if the Court decides not to dismiss the new

23  action in its entirety, as it is authorized to do, at a minimum it should stay all proceedings in this

24  case to allow *HP I* to reach its conclusion without the diversion and wastefulness of duplicative

25  litigation.

26

27

28

EMC's Motion to Dismiss
Case No. C-04-04546 JF

## II.    BACKGROUND

### A.    This Case Was Filed to Circumvent a Ruling in *HP I.*

HP filed its complaint in *HP I* on September 30, 2002.  *See* EMC's Request for Judicial Notice ("RJN") Ex. A.[1]  Almost two years later, on August 17, 2004, HP filed its Motion to Add Products to Their Infringement Contentions ("Motion to Add Products"), seeking leave under Patent Local Rule 3-7 to add accused products to the case.  *See* RJN Ex. B. The infringement allegations and accused products HP sought to add were detailed in Exhibit A to the Declaration of Christopher D. Landgraff filed in support of HP's motion.  *See* RJN Ex. C. By Order dated October 22, 2004, this Court denied HP's Motion to Add Products, holding that HP had failed to show the good cause required by Patent Local Rule 3-7 for amending its infringement contentions.  *See* RJN Ex. D at 7-8.

Five days after the Court issued its Order denying HP's motion, HP filed its complaint in this action.  In this action, HP accuses ***the same products*** that it unsuccessfully attempted to add to its infringement contentions in *HP I.*  Attached as Appendix A to this memorandum is a side-by-side comparison of the accused products HP sought to add to *HP I* through its Motion to Add Products and the accused products identified in the complaint in *HP II.*  The chart demonstrates that all of the products accused in *HP II* were included in HP's unsuccessful motion.

### B.    This Case Presents the Same Claims HP Was Prohibited From Asserting in *HP I.*

Because this action was filed to circumvent the order in *HP I,* the duplicative nature of the two lawsuits is unmistakable.  Both arise out of the same common nucleus of operative facts.  The parties are the same.  The counsel for HP and EMC are the same.  The

---

[1]  A district court may take judicial notice of the pleadings and orders from another case and properly consider them in deciding a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Emrich* v. *Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988) (district court may properly take judicial notice of district court proceedings in deciding motion to dismiss); *Mir* v. *Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("In addition to the complaint, it is proper for the district court to take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss.").  Accordingly, the Court may properly consider the pleadings, orders, and other documents from *HP I* in deciding this motion.

patents at issue are the same. The complaint in this action alleges infringement of the following six patents, each of which is also asserted by HP in *HP I*: U.S. Patent Nos. 5,237,658 ('658 patent), 5,247,618 ('618 patent), 5,315,602 ('602 patent), 5,917,253 ('253 patent), 6,269,453 ('453 patent), and 6,356,979 ('979 patent).**2** Because HP filed a Notice of Related Case, *HP II* has been transferred to the judge before whom *HP I* is pending. Indeed, in its Notice of Related Case, HP admitted not only the significant overlap between the two cases, but that *HP II* was filed because its Motion to Add Products in *HP I* was denied. *See* RJN Ex. E at 2.

The infringement claims asserted by HP in this action either were or could have been asserted in *HP I*. Both cases involve EMC's Symmetrix and Clariion families of data storage systems. Every accused product listed in HP's complaint in this action was listed as an accused product in at least one version of HP's Preliminary Infringement Contentions in *HP I*, with the exception of a few model numbers that HP unsuccessfully attempted to add through its Motion to Add Products. *Compare* RJN Ex. F (Complaint in *HP II*) *with* RJN Ex. G (HP's March 3, 2003 Amended Preliminary Infringement Contentions in *HP I*), RJN Ex. H (HP's August 8, 2003 Second Amended Preliminary Infringement Contentions in *HP I*), and RJN Ex. C (Landgraff Decl. Ex. A). A number of the products identified in HP's complaint in this action were included in early versions of HP's Preliminary Infringement Contentions in *HP I*, only to be withdrawn in subsequent versions. For example, in its Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions served March 3, 2003 ("Amended Disclosure"), HP listed the Connectrix switches as accused products under HP's '658 patent. *See* RJN Ex. D at 5-6. In its Second Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions served August 8, 2003 ("Second Amended Disclosure"), however, HP removed the Connectrix switches as accused products. *See id*. HP followed a similar pattern with respect to its allegations against the Symmetrix 3000 and 5000 models. In its Amended Disclosure, HP identified these models as accused products under the '979 patent.

---

**2** A seventh patent asserted in *HP I*, U.S. Patent No. 5,390,327, was not asserted in *HP II*.

*See id.* at 6.  But in its Second Amended Disclosure, HP withdrew these products from its

allegations under the '979 patent.  *See id.*

       HP acknowledged in *HP I* that it was aware of the products it now seeks to

accuse in this new action.  Indeed, HP pointed to this knowledge as a factor supporting its

Motion to Add Products.  It stated in its motion:

> Most of the products HP seeks to add to its contentions are among
> products and product families identified in HP's original
> infringement contentions, or involve the same technology or
> features at issue in such products.  For example, a number of these
> products are simply additional Clarion or Symmetrix model
> numbers from the same family or series as those originally
> identified products.

RJN Ex. B at 4.

       In denying HP's Motion to Add Products, the Court observed that Patent Local

Rule 3-7 does not give a party an automatic right to amend its infringement contentions.

Rather, Rule 3-7 requires a party to show "good cause," something HP failed to do.  *See* RJN

Ex. D at 7.  The Court took particular note of the fact that many of the products HP sought to

add were actually included in early versions of HP's infringement contentions but then were

withdrawn by HP.  The Court held:

> A particular weakness in HP's argument is that it does not provide a
> sufficient explanation as to why it should be granted leave to add
> accused products that it originally included in one version of its
> PICs and then removed in the next version, which has operative
> since August 2003.  Further, if the Court's Claim Construction
> Order merely confirmed infringement theories HP already had prior
> to the claim-construction hearing, it is not clear why those products
> were not accused earlier . . . .

*Id.* at 7-8.  Thus, had HP acted diligently in *HP I*, it could have accused all of the products it now

accuses in *HP II*.

    **C.**    **The Issues in this Case Substantially Overlap With the Issues Being Litigated in *HP I*.**

       Because of the substantial overlap in parties, patents and subject matter, the

ultimate resolution of *HP I* will have a pervasive and substantial impact on this case.  The Court

1   and the parties have invested enormous time and resources in the litigation of HP's infringement

2   allegations. *HP I* is a mature case, having been pending and litigated for more than two years.

3   *See* RJN Ex. A. On June 23, 2004, after a two-day hearing, the Court issued its Order

4   Construing Claims. *See* RJN Ex. I (Docket No. 201). The Court construed thirteen key terms

5   from the HP patents asserted in both *HP I* and *HP II*. *See id.* Thereafter, the Court adopted a

6   Case Management Order designed to streamline the case and move it toward ultimate

7   resolution. *See* RJN Ex. K. Fact discovery on liability, with the exception of depositions,

8   closed on October 21, 2004. *Id.* ¶ 2. The Court also adopted an early period for summary

9   judgment motions (referred to as "Phase I" summary judgment proceedings) that required the

10  parties to submit summary judgment motions by November 17, 2004. *Id.* ¶ 4.

11      Seven summary judgment motions are now pending before the Court in *HP I*

12  (scheduled to be heard on February 11, 2005) directed to the validity and/or infringement of five

13  of the HP patents pending in *HP II*. *See id.* (Docket Nos. 321, 324, 328, 332, 334, 337, 340).

14  After the Court rules on the Phase I summary judgment motions, the case will proceed to expert

15  and damages discovery on those patents and claims that survive. *See* RJN Ex. K ¶¶ 5, 6. Under

16  the current schedule, EMC expects that *HP I* will be tried in 2005.

17      *HP I* also involves affirmative defenses which, if successful, would render the

18  HP patents at issue in *HP II* unenforceable, or preclude infringement claims based on those

19  patents. For example, with respect to the six HP patents at issue in *HP II*, EMC has pending in

20  *HP I* affirmative defenses of express license, implied license, fraud on the U.S. Patent Office

21  and estoppel. *See* RJN Ex. J at 5-11. Any one of those defenses could moot the infringement

22  allegations in *HP II*. *See* Part V.A *infra*.

23      If *HP II* is not dismissed or stayed, the parties and the Court will be required

24  under the Patent Local Rules to participate in a whole new cycle of an answer and possible

25  counterclaims, Preliminary Infringement Contentions (Patent Local Rule 3-1), Preliminary

26  Invalidity Contentions (Patent Local Rule 3-3), Exchange of Proposed Terms and Preliminary

27  Claim Constructions (Patent Local Rules 4-1 and 4-2), preparation and filing of a Joint Claim

28

EMC'S MOTION TO DISMISS
CASE NO. C-04-04546 JF

Construction Statement (Patent Local Rule 4-3), and claim construction briefs and hearing (Patent Local Rules 4-5 and 4-6).  In addition, absent dismissal, stay or other intervention by the Court, HP may be able to subject EMC to a new wave of discovery on its allegations in *HP II*. Because *HP I* would not have reached final judgment while *HP II* is pending, there undoubtedly would be numerous and repeated disputes about which rulings in *HP I* are dispositive, what new discovery in *HP II* is duplicative or cumulative of what occurred in *HP I*, and whether HP could change infringement and claim construction positions from those it asserted in *HP I*.

## III.   THIS ACTION SHOULD BE DISMISSED PURSUANT TO THE RULE AGAINST CLAIM SPLITTING.

### A.   The Rule Against Claim Splitting.

This motion is based on law holding that a party cannot split its causes of action in order to circumvent an adverse ruling in a pending action.  The rule against "claim splitting" prohibits a party from asserting in a new lawsuit any claims that could have been asserted in a pending lawsuit between the same parties, and requires that all claims arising out of a single wrong be presented in one action.  *See Curtis* v. *Citibank N.A.*, 226 F.3d 133, 140 (2d Cir. 2000); *Sensormatic Sec. Corp.* v. *Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 579 (D. Md. 2004). The rule originated more than a century ago with the U.S. Supreme Court's decision in *United States* v. *Haytian Republic*, 154 U.S. 118 (1894), where the Court stated:

> It is undoubtedly a settled question that a party seeking to enforce a claim legally or equitably must present to the court, either in pleading or in proof, or both, all the grounds upon which he expects a judgment in his favor.  He is not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail.  There would be no end to litigation if such a practice were permissible.

*Id.* at 125 (citation and internal quotation marks omitted).

The rule is based on the doctrine of res judicata.  *See Sensormatic*, 329 F. Supp. 2d at 579 n.4.  Under res judicata, a judgment in a previous action bars all claims that were asserted — or could have been asserted — in the previous action between the same parties.  *See United*

-7-

1  *States ex rel. Barajas* v. *Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998) ("It is immaterial

2  whether the claims asserted subsequent to the judgment were actually pursued in the action that

3  led to the judgment; rather, the relevant inquiry is whether they could have been brought.").

4  While res judicata applies where the first action has resulted in a final judgment, the rule against

5  claim splitting applies when the first action is still pending. *See Sensormatic*, 329 F. Supp. 2d at

6  579 n.4. But both doctrines are directed to the same principle: All claims arising out of the same

7  transaction or series of transactions must be asserted in the same lawsuit. Splitting a cause of

8  action into two separate lawsuits unnecessarily consumes the resources of the courts and increases

9  the cost and inconvenience to the affected parties. Thus, the cases acknowledge that both res

10  judicata and the rule against claim splitting are designed to foster "judicial economy and protect[]

11  the parties from vexatious and expensive litigation." *Curtis*, 226 F.3d at 138; *Sensormatic*, 329 F.

12  Supp. 2d at 579 n. 4.

13  The rule against claim splitting has particular applicability to the situation, such as

14  the one here, in which a dissatisfied litigant files a second lawsuit in an attempt to circumvent a

15  ruling in a pending case. A number of courts have relied on the rule against claim splitting, and

16  the inherent power of a court to control its docket, to prevent a plaintiff from circumventing an

17  adverse ruling by filing a new case. The decision in *Sensormatic* is directly on point. In that

18  case, the plaintiff sought leave to amend its complaint to add new breach of contract claims, but it

19  did not file until after the deadline for amending the pleadings had passed. The trial court denied

20  the motion to amend, finding that the plaintiff had failed to establish good cause for the late

21  amendment. *Id.* at 577. The plaintiff then filed a second lawsuit in the same district, asserting the

22  same claims it sought to add through its unsuccessful motion to amend, as well as new claims that

23  were not raised in the motion to amend. *Id.* The defendant moved to dismiss the new action

24  pursuant to Rule 12(b)(6), invoking the rule against claim splitting.[3] The court granted the

25

26  _____

27  [3] A court may dismiss a complaint under Rule 12(b)(6) on the basis that it is barred by the effect of a previous or pending action. *See Scott* v. *Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (district court may properly dismiss complaint under Rule 12(b)(6) based on the res

28  judicata effect of an earlier action); *Sensormatic*, 329 F. Supp. 2d at 579 (dismissing complaint

-8-

1  motion as to two types of claims: (1) the claims that were asserted in the unsuccessful motion to

2  amend, and (2) other claims that plaintiff could have asserted in the pending action.  *Id.* at 579.

3          The *Sensormatic* court explained that the rule against claim splitting "prohibits a

4  plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single

5  wrong be presented in one action."  *Id.* (*quoting Myers* v. *Colgate-Palmolive Co.*, 102 F. Supp. 2d

6  1208, 1224 (D. Kan. 2000)).  The court noted in particular that a party should not be permitted to

7  circumvent a ruling in a pending action, such as a denial of leave to amend, by filing a new action

8  seeking the same relief.  The court held that the ruling in the first case "does not authorize

9  [plaintiff] to pursue those denied claims by bringing a second action."  *Id.* at 580.  *See also Chinn*

10  v. *Giant Food, Inc.*, 100 F. Supp. 2d 331, 334 (D. Md. 2000) (dismissing second action that was

11  filed to avoid scheduling order in a pending case).

12          A similar result was reached in *Oxbow Energy Inc.* v. *Koch Industries, Inc.*, 686

13  F Supp. 278 (D. Kan. 1988).  As in *Sensormatic*, the plaintiffs in *Oxbow* were denied leave to

14  amend their complaint in a pending action.  The plaintiffs sought to circumvent that ruling by

15  filing a second lawsuit.  The defendants moved under Rule 12(b)(6) to dismiss the new lawsuit,

16  arguing that the plaintiffs had improperly split their causes of action.  The district court agreed,

17  noting that the rule against claim splitting dates back more than a century to the United States

18  Supreme Court's decision in *United States* v. *Haytian Republic*, 154 U.S. 118 (1876).  The

19  *Oxbow* court noted that "all claims arising out of a single wrong must be prosecuted in one

20  action."  *Id.* at 282.  The Court expressly disapproved the strategy of disgruntled litigants filing a

21  new lawsuit to circumvent rulings in a pending case, noting that such conduct, if allowed, would

22  only encourage litigants to file new lawsuits to avoid adverse rulings in pending cases.  The court

23  stated:

24          Policy considerations also weigh heavily in favor of the decision to
           forbid splitting causes of action . . . . This district's docket would
25          become clogged and suffer virtual incapacitation if all litigants were
           allowed to bring a new cause of action every time a motion to
26          amend was denied or partial summary judgment was granted.

27  _____

28  under Rule 12(b)(6) where complaint was filed to circumvent an adverse ruling in another
    pending action).

EMC'S MOTION TO DISMISS
CASE NO. C-04-04546 JF

1    *Id.* at 282.

2              An attempt to circumvent an order denying leave to amend a complaint was also at

3    issue in *Curtis* v. *Citibank N.A.*, 226 F.3d 133 (2d Cir. 2000).  The Second Circuit affirmed the

4    dismissal of claims in a newly filed complaint that were asserted in order to circumvent an order

5    in the pending case denying plaintiffs leave to amend their complaint.  The court held that those

6    claims that could have been asserted in the pending action (as distinguished from later-arising

7    claims) were properly dismissed by the trial court.  *See id.* at 140.  The court observed:  "If

8    plaintiffs had timely raised those allegations, they would have been heard in *Curtis I.*  By filing

9    them in a second action, plaintiffs attempted to avoid the consequences of their delay.  It was not

10   an abuse of discretion to prevent them from doing so."  *Id.*

11        **B.      HP Is Improperly Splitting Its Causes Of Action In Order To Circumvent An**
12                **Adverse Ruling.**

13             There is no question that HP filed this new action to avoid the consequence of the

14   Court's order denying HP leave to amend its infringement contentions in *HP I.*  As discussed

15   above and demonstrated in Appendix A hereto, the allegations in the present complaint track

16   almost verbatim the infringement allegations that HP sought to add in *HP I* through its Motion to

17   Add Products.  HP's Notice of Related Case acknowledged that *HP II* was filed because of the

18   Court's refusal to permit HP to amend its infringement contentions in *HP I.*  *See* RJN Ex. E at 2

19   (*HP II* "accuses products that were . . . not permitted to be added to Plaintiffs' Patent Local Rule

20   3-6 Final Infringement Contentions" in *HP I*).

21             The principles of law cited by the courts in *Sensormatic, Chinn, Oxbow Energy*

22   and *Curtis* are directly applicable to this situation.  There is no material distinction between HP's

23   attempt to circumvent the Court's ruling barring HP from amending its infringement contentions

24   under Patent Local Rule 3-7 and an attempt to circumvent a ruling barring a plaintiff from

25   amending its complaint.  The purpose of Patent Local Rule 3-1 is to require a plaintiff set forth its

26   specific infringement claims, including the specific products accused of infringement.  The rule

27   provides the place and time for a plaintiff to specify its allegations in lieu of setting them forth in

28

                                            -10-

a complaint.  Amendment to a party's preliminary infringement contentions is allowed in certain

circumstances (Patent Local Rule 3-6) or by order of the Court upon a showing of good cause

(Patent Local Rule 3-7).  Just as Federal Rule of Civil Procedure 15(a) requires a party to obtain

leave of court to amend its complaint, Patent Local Rule 3-7 similarly requires a party to obtain

leave of court to amend its infringement contentions to add accused products.  For purposes of

applying the prohibition against claim splitting, the denial of a motion to amend infringement

contentions should be treated no differently than denial of leave to file an amended complaint.

As discussed above, the claims HP has alleged in its complaint in *HP II* could

have been asserted in *HP I*.  The patents asserted in this case are the same patents asserted in

*HP I*.  Most of the products identified in the complaint in this action are already at issue in *HP I*.

Indeed, most of the products were at one time or another the subject of HP's Preliminary

Infringement Contentions in *HP I*.  When it sought leave to add accused products in *HP I*, HP

made a point of telling the Court that most of the products it sought to add "are among products

and product families identified in HP's original infringement contentions, or involve the same

technology or features at issue in such products."  RJN Ex. B at 4 (acknowledging that "a

number of these products are simply additional Clariion or Symmetrix model numbers from the

same family or series as those originally identified products").  Not only has HP acknowledged

that it was aware of the products included in its new complaint, but the specific allegations HP

asserts in the complaint in *HP II* track the allegations set forth in Exhibit A to the Landgraff

Declaration filed in support of the Motion to Add Accused Products in *HP I*.  *See* Appendix A.

**C.**      **Allowing HP To Proceed With This New Lawsuit Would Be Highly**
**Prejudicial To EMC And Set Dangerous Precedent In This District.**

As noted above, the rule against claim splitting is intended to preserve judicial

resources and protect parties from vexatious and wasteful litigation.  Allowing HP to proceed

with this new case would do violence to both of those objectives, and set a dangerous precedent.

First, it is no exaggeration to state that the Court and its staff have already devoted

substantial resources to the patent litigation between HP and EMC.  The Court carefully

EMC'S MOTION TO DISMISS
CASE NO. C-04-04546 JF

considered HP's Motion to Add Products, painstakingly discussing the merits of the motion before ultimately finding that HP had failed to establish the requisite good cause. *See* RJN Ex. D. Now the Court faces a new case that is designed to end-run the Court's ruling. The new case will draw the Court into a substantial duplication of effort and expenditure of resources. This action already asserts six HP patents and more than twenty EMC accused products. While the Court has substantial effort ahead of it to resolve *HP I,* it faces the prospect of adjudicating this second, duplicative action.

Second, allowing HP to proceed with this new case would unfairly subject EMC to vexatious and expensive litigation. EMC has already expended resources in filing this motion in order to prevent HP from circumventing the Court's order. If the new complaint is not dismissed, that will only be the start of the unfair burden placed on EMC by HP's claim-splitting. *HP II* would subject EMC to significant inequity and hardship at a time when it is devoting its resources to adjudication of all of the outstanding issues in *HP I.* It is fundamentally unfair to subject EMC to the expense of litigating another patent suit with HP when that suit was instigated because HP did not diligently pursue its allegations in the pending suit.

There is another important principle at issue. Allowing HP to end-run the court's ruling would set an undesirable precedent for the enforcement of the patent local rules in this district. As noted above, the Court denied HP's Motion to Add Products because HP failed to establish the good cause required by Patent Local Rule 3-7. If every dissatisfied litigant who is denied leave to amend its infringement contentions could simply file a new lawsuit to achieve the same objective, the "good cause" requirement of Rule 3-7 would be eviscerated. New lawsuits filed to circumvent rulings under Rule 3-7 would become commonplace, and the judges in this district would face many duplicative actions filed by parties dissatisfied with their orders.

## IV. HP WAIVED ALL CLAIMS AGAINST EMC PRODUCTS THAT HP PREVIOUSLY ACCUSED IN *HP I.*

An independent basis exists to dismiss the first and sixth causes of action in *HP II.* The first cause of action accuses EMC's Connectrix switches of infringing the '658

patent, and the sixth cause of action accuses EMC's Symmetrix 3000 and 5000 series products

of infringing the '979 patent. *See* RJN Ex. F (*HP II* Complaint) ¶¶ 10, 45. The Court should

dismiss these allegations with prejudice for the independent reason that HP waived its

infringement claims against these products by accusing them of infringing the '658 and '979

patents in earlier infringement contentions served in *HP I*, and then withdrawing those

allegations in subsequent contentions. *See* RJN Ex. D at 5-6.

Under Ninth Circuit law, where a party files a pleading that asserts a specific

claim, and then amends its pleading to remove that claim, the removed claim is waived and

cannot be re-asserted. *See, e.g.*, *King* v. *Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("All causes

of action alleged in an original complaint which are not alleged in an amended complaint are

waived."); *see also London* v. *Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("It has

long been the rule in this circuit that a plaintiff waives all causes of action alleged in the original

complaint which are not alleged in the amended complaint.").

This rule has been applied to a patent infringement case when, as here, a plaintiff

accuses a product of infringement and then withdraws its infringement allegations against that

product. In *Reiffin* v. *Microsoft Corp.*, 270 F. Supp. 2d 1132 (N.D. Cal. 2003), the plaintiff

filed a complaint against Microsoft identifying its "Windows CE" operating system as an

accused product. The plaintiff later filed a First Amended Complaint that removed Windows

CE as an accused product. *Id.* at 1161. When the plaintiff later filed a motion to amend its

complaint to re-accuse Windows CE of infringement, the court refused to permit the

amendment. Relying on the Ninth Circuit authority cited above, the Court held that the plaintiff

waived his infringement claims against Windows CE. *Id.* at 1161 ("It is plaintiff, however, who

has failed to reallege claims of infringement of Windows CE in the [First Amended Complaint]

and plaintiff who must suffer the consequences: a waiver of those claims.").

The same practice of accusing products of infringement, and then withdrawing

those allegations, has occurred in this case. As the Court observed in its order denying HP's

motion to add EMC accused products:

EMC'S MOTION TO DISMISS
CASE NO. C-04-04546 JF

1

2

3

4

5

6

7

8

9

In particular, EMC points out that although HP suggests it first learned that EMC's line of **Connectrix switching products** allegedly infringe the '658 patent at a February 2004 deposition, those same products were listed as accused products with respect to the same patent in HP's March 3, 2003, Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions ("Amended Disclosure") but then did not appear in HP's August 8, 2003, Second Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions ("Second Amended Disclosure").  EMC illustrates a similar pattern of accusing products in the March 3, 2003, Amended Disclosure and then removing those same products in the August 8, 2003, Second Amended Disclosure with respect to other product models HP now seeks to add to its PICs (i.e., the **Symmetrix 3000 and 5000 models** as accused products under the '979 patent).

10    RJN Ex. D at 5-6 (footnote omitted; emphasis added).

11    There is no material distinction between Reiffin's waiver of his claims against

12    Windows CE and HP's waiver of its claims against EMC's Connectrix, Symmetrix 3000, and

13    Symmetrix 5000 products.  Both cases involved infringement allegations that were brought

14    against specific products which were subsequently withdrawn through amendment.  The

15    infringement contentions HP served under Patent Local Rule 3-1 serve precisely the same

16    purpose as the Complaint in *Reiffin* — to define the scope of the patent infringement allegations

17    and identify the accused products.[4]  The Court should accordingly dismiss HP's first cause of

18    action as to EMC's Connectrix products, and dismiss HP's sixth cause of action as to the

19    Symmetrix 3000 and 5000 products.

20    **V.       IF THIS ACTION IS NOT DISMISSED, IT SHOULD BE STAYED.**

21    In the event the Court does not dismiss the complaint in its entirety, EMC

22    respectfully submits that any remaining claims should be stayed until *HP I* reaches final

23    judgment.  A stay of this action will conserve judicial resources by avoiding the enormous

24    duplication of effort this case would entail.

25

26

27

28

[4]  The *Reiffin* case was initiated on January 23, 1998, 270 F. Supp. 2d at 1135, before the adoption of Patent Local Rule 3-1 in this district.  Accordingly, the plaintiff identified its accused products in its complaint.

EMC'S MOTION TO DISMISS
CASE NO. C-04-04546 JF

1    The Court has inherent authority to stay proceedings in this case. *See Landis* v.

2  *North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental

3  to the power inherent in every court to control the disposition of causes on its docket with

4  economy of time and effort for itself, for counsel, and for litigants."). As the Ninth Circuit has

5  recognized, a district court may stay proceedings pending the outcome of another action:

> A trial court may, with propriety, find it is efficient for its own
> docket and the fairest course for the parties to enter a stay of an
> action before it, pending resolution of independent proceedings
> which bear upon the case. This rule applies whether the separate
> proceedings are judicial, administrative, or arbitral in character, and
> does not require that the issues in such proceedings are necessarily
> controlling of the action before the court.

10  *Mediterranean Enters., Inc.* v. *Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (citation

11  and alteration omitted). In determining whether to stay an action, a court may consider the

12  following factors: (1) the potential prejudice to the non-moving party; (2) the hardship and

13  inequity to the moving party if the action is not stayed; and (3) the conservation of judicial

14  resources by avoiding duplicative litigation. *See CMAX, Inc.* v. *Hall*, 300 F.2d 265, 268 (9th

15  Cir. 1962); *Roderick* v. *Mazzetti & Assocs., Inc.*, 2004 WL 2554453, at *3, *12 (N.D. Cal.

16  2004) (applying *CMAX* factors and granting motion to stay). Each of these factors weighs in

17  favor of staying this action pending final judgment in *HP I*.

18  **A.    Staying *HP II* Will Conserve Judicial Resources By Avoiding Duplicative**
19  **Litigation.**

20    Staying this action and allowing *HP I* to proceed to judgment will conserve

21  substantial judicial resources. Under this *CMAX* factor, "the test is whether simplifying or

22  complicating of issues, proof, or questions of law can be expected to result from a stay, such

23  that 'the orderly course of justice' is furthered." *Cohen* v. *Carreon*, 94 F. Supp. 2d 1112, 1117

24  (D. Or. 2000) (emphasis omitted). The issues do not have to be identical to justify a stay. *Id*.

25  Because the issues and questions of law in *HP II* are similar to *HP I*, as described above, and

26  would be simplified by a stay, this factor weighs heavily in favor of staying this action.

27

28

-15-

1    Once judgment is reached in *HP I*, either through trial or summary judgment,

2    that judgment may have substantial preclusive effects on the overlapping issues in the instant

3    case.  For example, a finding in *HP I* that HP's patents are invalid will preclude HP's claims for

4    infringement of those patents in *HP II*.  *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,

5    170 F.3d 1373, 1382 (Fed. Cir. 1999) (affirming district court's application of collateral

6    estoppel based on a prior judgment of invalidity and unenforceability); *Typeright Keyboard*

7    *Corp.* v. *Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) ("[A] judgment of invalidity

8    necessarily moots the issue of infringement . . . .").  Therefore, summary judgment motions and

9    trial in *HP I* may eliminate the need to litigate a large portion of this case.

10   **B.**    **Denying A Stay Of *HP II* Would Result In Hardship And Inequity To EMC.**

11   A denial of a stay will cause EMC to face the inequity and hardship that

12   inevitably occur as a result of duplicative, piecemeal litigation.  *See Cohen*, 94 F. Supp. 2d at

13   1118 (denying stay would require defendant to "waste time and money needlessly litigating the

14   same substantive and procedural issues").  Without a stay, EMC will be subject to the expense

15   of a new round of document discovery, written discovery, depositions, and claim construction

16   proceedings.  It could present HP with an opportunity to relitigate issues already decided in

17   *HP I.*  For example, if *HP II* were permitted to proceed, the parties would again have to go

18   through the process of preparing and serving infringement and invalidity contentions, conferring

19   on claim construction issues, and conceivably submitting new claim construction matters to the

20   Court for decision.  The Court will recall that in *HP I*, the parties agreed on a process for

21   submitting key terms for claim construction.  Allowing HP to proceed with this new lawsuit

22   would give HP the opportunity to instigate a new phase of claim construction with respect to

23   claim terms that were not included in the Court's Order Construing Claims in *HP I.*

24   It is no secret that HP is a substantially larger company than EMC, with almost

25   limitless resources to litigate patent suits.  Allowing HP to pursue a second, duplicative action

26   would be highly prejudicial to EMC.  This factor thus weighs in favor of a stay.

27

28

1    **C.      A Stay Will Not Prejudice HP.**

2            Staying this action pending the outcome of *HP I* will not cause any prejudice to

3    HP.  Indeed, a stay would benefit both HP and EMC by avoiding the expense of litigating issues

4    that may be resolved by *HP I*.  HP would be hard pressed to argue that there is urgency in

5    litigating the claims asserted in this action in light of its dilatory conduct with respect to those

6    very same claims in *HP I*.  For example, HP cannot claim any prejudice from a delay in

7    pursuing its claim that the Connectrix switches are infringing products.  As noted above, in one

8    of its versions of infringement contentions in *HP I* served on March 3, 2003, HP initially

9    identified these switches as accused products, only to withdraw those allegations five months

10   later when it filed its Second Amended Disclosures on August 8, 2003.  HP was content with

11   this record until August 2004, when it sought leave to bring the switches back into *HP I*.  If

12   there was any urgency in pursuing the claims alleged in this action, HP presumably would have

13   been more diligent in pursuing them in *HP I*.  This *CMAX* factor, like the other two, weighs in

14   favor of a stay.

15   **VI.      CONCLUSION**

16           For all of the reasons detailed above, EMC respectfully requests that this Court

17   dismiss HP's complaint in its entirety.  In the alternative, EMC requests that any claims not

18   dismissed be stayed pending final judgment in *HP I*.

19

20   Dated: December 2, 2004                          Respectfully submitted,

21                                                    ORRICK, HERRINGTON & SUTCLIFFE LLP

22

23                                                    /s/  Chris R. Ottenweller  /s/
                                                      ─────────────────────────────
24                                                    Chris R. Ottenweller
                                                      Attorneys for Defendant and Counterclaimant
25                                                    EMC Corporation

     Of Counsel:
26   Krish Gupta, Esq.
     EMC Corporation
27   176 South Street
     Hopkinton, MA 01748

28

                                              -17-

1   Pursuant to General Order 45, I, Mark R. Weinstein, hereby attest that Chris R. Ottenweller has

2   concurred in this filing.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DOCSSV1:288065.1

28

-18-